### SHAW et al. v. LEVY.
#### Patent Appeals Nos. 2835–2837.

Court of Customs and Patent Appeals.
June 6, 1932.

Munson H. Lane, of Washington, D. C., for appellant Shaw.

Edwin S. Clarkson, of Washington, D. C., for appellant Gillespie.

Johnston & Jennings, of Birmingham, Ala. (Robert D. Johnston, Jr., and Henry L. Jennings, both of Birmingham, Ala., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in three interference proceedings from decisions of the Board of Appeals of the United States Patent Office, awarding priority of invention in each interference to appellee.

Interference No. 52,585 is involved in appeal No. 2835, interference No. 53,724 in appeal No. 2836, and interference No. 55,857 in appeal No. 2837. For the purposes of the hearing before us, the records in all of the interferences were consolidated.

Inasmuch as the issues requiring our determination are substantially the same in each of these appeals, we shall dispose of them in one opinion.

In its decision in interference No. 52,-585, the Board of Appeals described the involved invention as follows:

"The invention relates to artificial teeth of the bridgework type. The bridge, or metal backing, is provided on its outer side with a flat surface against which the back of a porcelain facing seats. That portion of the bridge which faces the gums is provided with another flat surface which meets the first flat surface at an obtuse angle. Stated in another way the second flat surface is inclined inwardly and toward the gums. The metal portion provides the chewing surface and is also referred to as a cusp plate.

"The porcelain tooth comprises a facing, a crown portion and a root extension formed as an integral structure. The back of the facing and the end of the crown are formed as flat surfaces and are so arranged that they seat on the flat surfaces of the metal backing. The root extension extends a short distance into the root socket on the freshly drawn natural tooth which is being replaced. The cooperating inclined surfaces on the metal backing and the tooth crown are provided with a transversely arranged tongue and undercut groove connection. In the preferred form the tongue is a post united by a thinner web to the metal backing and the cooperating groove or mortise is formed in the tooth.

"The mortise extends through the inner face of the tooth. The connection permits the tooth to be removed from the bridge while the latter is attached in position within the mount, since the tooth in moving outwardly

also moves away from the gums sufficiently to permit withdrawal of the root extension from the root socket."

In interference No. 52,585, the issue is stated in two counts, in interference No. 53,724, in one count, and in interference No. 55,857 there are three counts. In view of the conclusion which we have reached, it is sufficient for illustrative purposes to set out the count in interference No. 53,724. It reads: "A divisible tooth including a tooth body and a cusp plate, the tooth body being formed with an integral root extension, a backing seat formed on said tooth body, said seat being disposed so as to be out of contact with the gum, a bore in the tooth body extending from the lingual face toward the labial face, a slot of less diameter opening said bore for a part of its length to the surface of said seat, the remaining portion of the bore being closed to said seat, and divergent to the part of the surface beyond the end of the slot, said cusp plate having a post connected to it by a plate of less diameter than the post whereby the post and plate are adapted to slide and fit in said bore and slot and thereby connect the cusp plate to the tooth body, the labial end portion of the post extending into the tooth body beyond the labial end of the slot."

The issues involve an application by appellant Shaw, filed October 1, 1921, an application filed by appellee on August 28, 1922, and an application filed by appellant Gillespie on July 1, 1924. There is also involved an application filed by appellant Shaw on June 7, 1927, which was given the benefit of an earlier filing date of a joint application of Shaw and Robinson filed August 3, 1922. It appears that the applications of appellants Shaw and Gillespie are owned by a common assignee, the Columbus Dental Manufacturing Company, and the petitions for appeal to this court on behalf of both appellants are signed by the same attorney.

In their preliminary statements the parties alleged conception and reduction to practice of the invention as follows: Appellant Shaw, conception on or about December 20, 1920, reduction to practice on or about January 6, 1921; appellant Gillespie, conception on or about November 1, 1920, reduction to practice on May 1, 1921; appellee Levy, conception on or about March 15, 1917, reduction to practice during the latter part of March, 1917.

Each of the parties submitted testimony.

The Examiner of Interferences held that, although appellee was the first to conceive the invention, his purported reduction to practice in 1917 was nothing more than an abandoned experiment; that he did not reduce the invention to practice until after the reduction to practice of the invention by appellant Gillespie, and was not diligent in reducing it to practice; that appellant Shaw derived the invention from appellee Levy; and, accordingly, awarded priority of invention to appellant Gillespie.

Although the Board of Appeals concurred in the finding of the Examiner that appellant Shaw derived the invention from appellee, it held that appellee conceived and reduced the invention to practice in March, 1917, long before either of the appellants entered the field; that appellee did not suppress nor conceal the invention; and that, as he was the first to conceive and the first to reduce the invention to practice, appellee was entitled to an award of priority. The decision of the Examiner of Interferences was, accordingly, reversed.

With respect to the testimony concerning appellee's reduction to practice, the Board, in its decision in interference No. 52,585, said:

"In the year 1917, Levy was a practicing dentist in the city of Birmingham, Alabama. He was then living with his father-in-law Levi, one of the witnesses who has testified in his behalf. He shared offices with Dr. Fox, another of his witnesses, in the Brown Marx Building. Dr. Fox was an eye, ear, nose and throat specialist, and Levy impressed with the fact that the artificial eyes used by Fox did not irritate the surrounding tissues of his patients, conceived the idea of providing a porcelain root extension to fit the root socket of a freshly drawn tooth and thereby prevent the gums from receding away from the facing due to shrinkage of the bony process. With the facings then in use objectionable food gathering spaces developed between the ends of the facings and the gums.

"The prior detachable facings had been attached to the metal backing by a mounting known in the trade as a Steele's backing and comprising a metal plate provided with a post or pin and connecting web adapted to engage a mortise in the facing, the plate being rigidly attached to the bridge. Levy thought artificial teeth having integrally formed facings and root extensions might in like manner be detachably mounted on a permanent bridge provided the connecting means were positioned along inclined seating surfaces on the bridge and tooth crown to permit the root extension being withdrawn from the root socket.

"Dr. Fox, having an abscessed tooth which needed extraction, consented to let Levy make and place in his mouth a tooth of this construction. Levy made by hand an artificial tooth which he attached by a Steele's mounting to a bridge spanning the space provided by the extracted tooth. The color of the artificial tooth was bad and Levy removed it while the bridge was in place and replaced it with another. The color of the second tooth was also unsuitable. The hand manufacture was slow and tedious and Levy constructed a mold to facilitate the operation. This mold is in evidence as Levy's Exhibit No. 13. Several teeth were made and tried in succession but a satisfactory color had not been obtained when several days after the initial installation it became necessary to remove the bridge because one of the teeth to which it was anchored had also become abscessed, which necessitated extraction of the abutment tooth. The artificial teeth were not cemented to the bridge, but the connection employed held them firmly in place."

We think the foregoing is a correct statement of the facts. In addition thereto, the testimony shows that, although, between the dates of appellee's conception and his reduction to practice in March, 1917, appellee made drawings of the invention and exhibited them to the witness Fox, neither they nor the tooth placed in the mouth of the witness Fox were preserved. However, a mold for the formation of that tooth, prepared by appellee, was introduced in evidence and identified by both appellee and the witness Fox, the latter stating that he recognized it by the fact that in March, 1917, he, by means of a screw driver, scratched his initials, together with the figure 17, upon it. The letters and figures referred to clearly appear upon the exhibit.

We have carefully considered the evidence of record, having in mind especially the arguments made by counsel for appellants that appellee's alleged reduction to practice in March, 1917, was merely an abandoned experiment. We are impressed, as undoubtedly was the Board, with the clear, positive, and intelligent testimony of Dr. Fox, whose testimony corroborates that of appellee.

Dr. Fox was, not only in a position to know the facts, but, from all the circumstances of the case, was not likely to forget them. Any extended discussion is unnecessary, in view of the detailed discussion of the facts by the Board of Appeals. We content ourselves, therefore, with the statement that we are in harmony with the views expressed by the Board, and that, in our opinion, the invention involved in the counts of these interferences was actually reduced to practice by appellee in March, 1917.

It is contended, however, by counsel for appellants that, even if it be conceded that he reduced the invention to practice in March, 1917, appellee is not entitled to prevail in these interferences because he suppressed and concealed the invention. With respect to appellee's conduct subsequent to his reduction of the invention to practice in March, 1917, the Board of Appeals, in its decision in interference No. 52,585, said:

"* * * After securing his reduction to practice Levy did nothing with the invention until 1920. His interest was then stimulated by an article by Dr. Tinker in the March number of The Dental Summary (Levy's Exhibit No. 2). This article disclosed artificial teeth somewhat similar to Levy's but not constructed in such manner as to be removable from the bridge in the manner contemplated by Levy. He then disclosed the invention to his attorney Johnston who prepared an application, Serial No. 424,546, which was filed in the Patent Office on November 16, 1920. This application was inadvertently allowed to abandon in August, 1922, and was followed by the Levy application involved in this proceeding, which application was filed on August 28, 1922. The abandoned application, a copy of which constitutes Levy's Exhibit No. 3, discloses in Fig. 1 a form of the invention in which the pin or post is attached to the tooth and the mortise is in the metal backing. Fig. 4 shows the reverse form with the mortise in the tooth. Although neither figure shows the conventional form of Steele's backing used by Levy in the Fox tooth, it is clear Levy intended to secure broad protection regardless of whether the bridge or the backing is provided with the mortise. Count 1 is readable on both forms and count 2 is readable on the Figure 4 form. Were it not for the few days intervening between the abandonment of the earlier application and the filing of the later application, Levy would be entitled to the date of November 16, 1920, for constructive reduction to practice.

"Shortly before the filing of the first application, Levy disclosed the invention to a great many dentists and representatives of dental manufacturers at a dental manufacturers' convention held in Birmingham, Alabama, early in November, 1920. This was prior to any date to which either of the other parties is entitled. The Levy record shows

continued efforts by Levy to interest manufacturers leading up to the manufacture of teeth in large quantities by the Dixie Dental Mfg. Co., of Birmingham. We fail to see where that [there] was anything in Levy's conduct which would warrant the inference of intention to abandon the invention, or that there was suppression or concealment resulting in forfeiture."

With respect to the quoted count, the Board, in interference No. 53,724, said: "The instant count is more specific to the connecting means between the tooth body and cusp plate than are the counts in the companion case. While not readable on any one form of the invention illustrated in Levy's abandoned application Serial No. 424,546, filed November 16, 1920, it is supported by the disclosure in the Levy application involved in this proceeding and is also readable on the tooth structure which Levy successfully tested in the year 1917."

The element in this count which chiefly distinguishes it from the counts in the other interferences is "the labial end portion of the post extending into the tooth body beyond the labial end of the slot."

As stated by the Board, this element was not disclosed in appellee's abandoned application, but is readable upon his tooth structure of 1917, heretofore discussed.

Appellants contend, with reference especially to the quoted count, that appellee did not disclose a tooth, embodying the elements of that count, at the dental manufacturers' convention, held in November, 1920, in Birmingham, Ala., nor at any other time or place.

We have carefully examined the testimony upon this point and find that a tooth embodying all of the elements of that count, as well as the elements defined in the other counts of these interferences, was freely disclosed by him at the dental convention. This was before either of the appellants entered the field.

It is true that appellee was inactive from shortly after he reduced the invention to practice until 1920. However, there is, in our opinion, no evidence whatsoever to indicate any suppression or concealment of the invention, nor inactivity on the part of appellee after either of the appellants entered the field. On the contrary, it has been established by the evidence that, at and prior to the time either of the appellants entered the field, appellee was active in attempting to commercialize the invention, and freely disclosed the invention to any and all whom he thought might assist him.

We are of opinion that the Board of Appeals reached the right conclusion. Its decisions are, accordingly, affirmed.

Affirmed.